

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

Bernadette Pujols
   Plaintiff

v.                              **CASE NUMBER:** 98-1348(HL)

Ser-Jobs for Progress National, Inc., et al.
   Defendants

## OPINION AND ORDER

### Introduction

     Before the Court is a motion for summary judgment filed by Defendant Ser-Jobs for Progress National, Inc. ("Ser-Jobs"). Ser-Jobs is a Texas nonprofit corporation, with offices in Puerto Rico, engaged in providing training and employment services to indigent Hispanic families. Plaintiff Bernadette Pujols ("Pujols") was employed by Ser-Jobs from 1996 until her termination in September of 1997. Pujols claims she was subjected to sexual harassment and retaliation in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17 and unspecified Puerto Rico laws. Pujols brings suit against Ser Jobs, as well as individual claims against Jose Torres and Angel Jourdan seeking injunctive relief and monetary damages to compensate her for her losses.





AO 72A
(Rev 8/82)

Factual Background

      Bernadette Pujols began working at Ser-Jobs' Puerto Rico office as Corporate Development Representative in January 1996.[1] She avers that Jose Torres ("Torres"), Ser-Jobs' Comptroller, sexually harassed her.[2] Torres worked at Ser Jobs' main office in Texas, but frequently interacted with Pujols via phone or during business trips. Pujols alleges the following harassing conduct by Torres: during a week-long Ser-Jobs convention held in April 1996 in Dallas, Torres made sexual comments and advances to Pujols.[3] After one activity, he walked Pujols back to her hotel room and attempted to kiss her when she opened the door.[4] After the convention, throughout the summer of 1996, Torres would call Pujols at the Puerto Rico office and her home making sexual innuendos.[5] On his business trips to Puerto Rico Torres would go to Pujols' home. During two of these visits, specifically in July and September, he forcefully attempted to kiss her. One of these incidents was witnessed by a Ser-Jobs' coworker who was visiting Pujols. Once he was back in Texas, Torres would send Pujols amorous messages to her beeper. On his visits to Puerto Rico he would also send her similar messages. In April 1997, while Pujols was in Texas for a training seminar, Juan Constantino ("Constantino"), Interim President of Ser-Jobs, asked Torres to drive Pujols back to her hotel.[6] Instead of

---

[1] Docket no. 91, exhibit 1, at par. 1.

[2] Docket no. 91, exhibit 1, at par. 5.

[3] Docket no. 77, exhibit 2, at 139.

[4] Docket no. 91, exhibit 1, par. 5; Docket no. 77, exhibit 2, at 150.

[5] Docket no. 91, exhibit 1, par. 6; Docket no. 77, exhibit 2, at 172-73.

[6] Docket no. 91, exhibit 1, par. 9.

2

taking Pujols to the hotel, however, Torres took her to his house and tried to sexually assault her.[7] Pujols opposed, and Torres drove her to the hotel.[8] The next morning Torres came to the hotel and made sexual comments to her.[9]

Pujols acknowledges being aware of Ser Jobs' policy against sexual harassment.[10] Pujols claims that she complained to Anabella Rodriguez ("Rodriguez"), head of personnel at Ser Jobs' Puerto Rico office, soon after the April 1996 incident and on several occasions, but the harassment continued.[11] During September 1996, Pujols declined to meet Torres at the airport for business matters. Pujols also informed the office receptionist that she would not take or answer calls from Torres.[12] Pujols did not file a written complaint, however, nor inform any other Ser Jobs' official of the harassment during 1996. On April 1997, the day after the incident at Torres' house in Texas, Pujols complained to Constantino.[13] Constantino, in response to Pujols' complaint, instructed Torres to stay away from Pujols.[14] Thereafter, Torres stopped harassing Pujols.[15]

---

[7] Docket 91, exhibit 1, par. 10-12.

[8] Docket 91, exhibit 1, par. 12.

[9] Docket 91, exhibit 1, par. 13.

[10] Docket 77, exhibit 11, at 38-39.

[11] Docket 91, exhibit 1, par. 5, 7-8.

[12] Docket 91, exhibit 1, par. 7.

[13] Docket 91, exhibit 1, par. 13.

[14] Docket 91, exhibit 1, par. 13.

[15] Docket 77, exhibit 17, at 32.

AO 72A
(Rev.8/82)

Pujols further complains of retaliation for having reported Torres' conduct to Constantino. Pujols claims Angel Jourdan, who was named Interim Director of Ser-Jobs' Puerto Rico Office during 1997 and was a close friend of Torres, would scorn her in front of other employees, would subject her work to closer scrutiny than that of other managerial employees in the Puerto Rico office and would closely monitor her whereabouts.[16] Torres allegedly restricted her communications with the main office in Texas and with Amigos de Ser, a group of donors which she organized.[17] Pujols contends such restrictions were unnecessary and interfered with her work performance.[18]

In August 1997, Pujols filed a complaint with the anti-discrimination unit of the Puerto Rico Department of Labor ("ADU") alleging sexual harassment and discrimination.[19] Pujols spoke to Ser-Jobs newly appointed President, Hugo Cardona, about the matter, to no avail.[20] One month later, Ser Jobs informed Pujols that the federal program under which Ser-Jobs operated had been eliminated, and her position would, consequently, terminate on September 30. Pujols claims that her termination was done in retaliation for having filed a complaint with the Department of Labor.[21] During late September, Ser-Jobs offered Pujols a position under the new federal program. Pujols declined because, in her view, the objectives established for the new position were

---

[16] Docket 91, exhibit 1, par. 14.

[17] Docket 91, exhibit 1, par. 14.

[18] Docket 91, exhibit 1, par. 14.

[19] Docket 91, exhibit 1, par. 15.

[20] Docket 91, exhibit 1, par. 15.

[21] Docket 91, exhibit 1, par. 17.

4

impossible to achieve.[22]

Summary Judgment Standard

The Court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining if a material fact is "genuine," the Court does not weigh the facts but, instead, ascertains whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995).

Once a party moves for summary judgment, it bears the initial burden. Specifically, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Crawford-El*, 118 S.Ct. 1584, 1598 n. 22 (1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once this threshold is met, the burden shifts to the nonmoving party. The nonmovant may not rest on mere conclusory allegations or wholesale denials. Fed. R. Civ. P. 56(e); *Libertad v. Welch*, 53 F.3d 428, 435 (1st Cir. 1995). Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.

---

[22] Docket 91, exhibit 1, par. 15-17.

5

R. Civ. P. 56(e). Further, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Of course, the Court draws inferences and evaluates facts "in the light most favorable to the nonmoving party." *Leary*, 58 F.3d at 751 (1986). Still, even in discrimination cases, summary judgment is appropriate where the nonmoving party rests entirely upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element of the discrimination claim. *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

<u>Sex Harassment Under Title VII</u>

Pujols alleges that Torres subjected her to various indiginites beginning in April of 1996 and ending in April of 1997. For her claim to be actionable under Title VII, Pujols must first prove exhaustion of administrative remedies. *See Brown v. General Services Administration*, 425 U.S. 820, 832 (1976). In a so-called "deferral jurisdiction" like Puerto Rico, exhaustion depends on the filing of a charge with the Equal Employment Opportunity Commission within 300 days of the purported discriminatory act. *See* 42 U.S.C. § 2000e-5(c)(1994); *see also Bonilla v. Muebles J.J. Alvarez*, 194 F.3d 275, 278 (1st Cir. 1999). Claims predicated on acts falling beyond the 300 day period are fatal and beyond the reach of Title VII. In the present case, Pujols filed an administrative complaint claiming sexual harassment in August of 1997. Thus, all acts which transpired prior to October of 1996 fall outside the applicable limitations period and are not actionable. The only discriminatory acts within the 300 day period are the

6

incidents which occurred in Texas in April of 1997.

Plaintiff tries to bypass the limitations barrier by claiming that defendants' actions were part of a continuous violation or, in the alternative, that they are admissible to prove severity or pervasiveness. The "continuing violation" theory allows a plaintiff to reach back to otherwise time-barred actions. *See Lawton v. State Mutual Life Ins. Co.*, 101 F.3d 218, 221 (1st Cir. 1996); *Jensen v. Frank*, 912 F.2d 517, 522 (1st Cir. 1990). There are two kinds of continuing violations: serial violations and systemic violations. Plaintiff has not alleged, nor is there any evidence of a systemic violation. The Court will address, therefore, the serial violation category.

A serial violation is comprised of a number of discriminatory acts emanating from the same discriminatory animus, one of which (at least) must occur within the limitations period. *Sabree v. United Bhd. of Carpenters and Joiners*, 921 F.2d 396, 400 (1st Cir. 1990). However, even if one act occurred within the statute of limitations period, the claim will fail if at the time the untimely acts occurred plaintiff knew or could have reasonably been expected to know of the discriminatory animus. *See Provencher v. CVS Pharmacy*, 145 F.3d 5, 14-15 (1st Cir. 1998)(a knowing plaintiff has an obligation to file promptly or lose his claim); *Sabree v. United Brotherhood of Carpenters*, 921 F.2d 396, 400 (1st Cir. 1990). In this case, Pujols' own words make it abundantly clear that she was aware of the discriminatory actionable animus since April of 1996. Pujols had knowledge of the company's policy against sexual harassment and complained to a company official about Torres' conduct. Consequently, Pujols may not avail herself now of the continuing violation theory to make up for her laxness in bringing her claim. Her attempt to bring

in the 1996 acts as part of a continuing violation must fail. "The law ministers to the vigilant not to those who sleep upon perceptible rights." *Puleio v. Vose*, 838 F.2d 1197, 1203 (1st Cir. 1987).

Pujols further contends that even if the 1996 incidents are stale for purposes of claiming damages, they are admissible as "background evidence" under *United Air Lines v. Evans* to prove pervasiveness and severity. 431 U.S. 553, 558 (1977). The First Circuit, following the *Evans* opinion, stated that time-barred acts are admissible as relevant background evidence in a proceeding in which the status of a current practice is at issue. *Sabree*, 921 F.2d at 402 ("prior acts would be relevant as evidence with regard to the timely claim (citation omitted), and would thus have to be addressed by the employer one way or the other). *See also, e.g., Allen v. County of Montgomery*, 788 F.2d 1485 (11th Cir. 1986) (Exclusion of evidence occurring prior to demotion at issue substantially affected plaintiff's ability to demonstrate discriminatory intent); *Downey v. Southern Natural Gas Co.*, 649 F.2d 302, 305 (5th Cir. 1981)(time-barred acts of discrimination admissible to "illuminate current practices which, viewed in isolation, may not indicate discriminatory motives" (citations omitted)).

In the present case, the timely incidents, if proven, are severe enough to show discriminatory intent. Thus, bringing evidence of the untimely acts is beyond what is necessary to show discriminatory animus. The 1996 acts, however, are probative of Rodriguez's knowledge of the harassment and Ser Jobs failure to promptly address the violations. Thus, although stale for purposes of damages, the time barred violations are admissible as background evidence.

Having cleared the threshold of timeliness, we now turn to Pujols' burden of proving a prima facie case of discrimination. Sexual harassment may take two forms: *quid pro quo* harassment or hostile work environment harassment. "The principal significance of the distinction is to instruct that Title VII is violated by either explicit or constructive alterations in the terms or conditions of employment and to explain the latter must be severe or pervasive." *Burlington Industries v. Ellerth*, 524 U.S. 742, 752, 118 S.Ct. 2257, 2264 (1998). Pujols claims Torres' conduct constituted hostile work environment. Hostile environment harassment "occurs when one or more supervisors or co-workers create an atmosphere so infused with hostility toward members of one sex that they alter the conditions of employment for them." *Lipsett v. University of Puerto Rico, 864, F.2d 881, 897 (1st Cir. 1988)*. One incident, if sufficiently severe and offensive, might create an abusive working environment actionable under Title VII. *Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525, 541 n.13 (1st Cir. 1995) ("We do not hold that a one-time episode is per se incapable of sustaining a hostile environment claim. The frequency of the alleged harassment is a significant factor, but only one of many to be considered in determining whether the conduct was sufficiently severe or pervasive that a reasonable person would find that it had rendered the environment hostile or abusive.")(internal quotation marks omitted). *See Lockard v. Pizza Hut*, 162 F.3d 1062 (10th Cir. 1998)(Harassing conduct by two male customers of waitress in restaurant was severe enough to create hostile work environment where men commented on her perfume, grabbed her by the hair and one of them grabbed her breast and placed his mouth on it); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995) ("even a single incident of

sexual assault sufficiently alters the conditions of a victim's employment and clearly creates an abusive work environment for purposes of Title VII liability")(citing Meritor, 477 U.S. at 67, 106 S. Ct. at 2405); *Dunegan v. City of Council Grove*, 77 F.Supp. 2d 1192 (D.Kan. 1999)(incident of supervisor putting arms around plaintiff, grabbing her breast and kissing her on both sides of the nec was sufficiently severe to constitute sexual harassment); *Al-Dabbagh v. Greenpeace*, 873 F.Supp. 1105 (N.D.Ill. 1994)(perpetrator held victim captive overnight; when she finally managed to escape, she had to be hospitalized for her injuries); *Barrett v. Omaha Natl. Bank*, 584 F. Supp. 22 (D. Neb. 1983)(one incident of offensive touching while inside a vehicle from which the plaintiff could not escape was sufficient to constitute sexual harassment). *See also* EEOC Policy Guidance on Sexual Harassment, 8 BNA FEP Manual 405:6691 ("The Commission will presume that the unwelcome, intentional touching of a charging party's intimate body areas is sufficiently offensive to alter the conditions of her working environment and constitute a violation of Title VII.")

In addition to proving conduct severe or pervasive enough to constitute actionable harassment, plaintiff must show that an official representing that institution knew, or should have known, of the harassment's occurrence. *Lipsett*, 864 F.2d at 901. Once the plaintiff meets its evidentiary burden, the employer may raise an affirmative defense made up of two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington*, 524 U.S. at 763, 118

S.Ct. at 2270.[23]

Applying these rules here, the Court must first determine whether Pujols has made a prima facie showing that sexually harassing actions took place. Pujols has presented evidence of Torres' unwelcome advances during April of 1997, namely the attempted assault on their way to the hotel and the sexual innuendos of the day after. Ser Jobs argues those acts, if true, do not rise to the level of actionable harassment under the 'severe or pervasive' standard. The Court expressly rejects defendant's argument that Torres' conduct did not rise to the level of discriminatory harassment. While trivial or isolated incidents do not give rise to liability, this Court finds that the instant case warrants a different result. Not only was the harassment by Torres of an extreme nature, it also took place in the restrained environment of his house, which added to plaintiff's stress. Hence, a jury may reasonably find that Torres' conduct was severe enough to be actionable under Title VII.

Ser Jobs further contends that even if severe enough to be actionable under Title VII, the incidents occurred outside the scope of employment and Ser Jobs is not liable. This argument deserves no merit. It is clear that Pujols was sent to Texas, at Ser Job's expense, in order to broaden her knowledge in work related areas. Moreover, it was

---

[23] The affirmative defense is available only when no tangible employment action is taken. *Id.* at 761. In the present case, Pujols does not claim tangible employment actions were taken against her while the harassment was taking place. The evidence shows quite the contrary. Pujols excelled in her job and was given a significant pay increase while the alleged violations were taking place. (Dkt. 77, Exh. 12). The adverse employment actions claimed by Pujols were allegedly taken in retaliation for reporting the sexual harassment. The Court will address those claims later in this opinion.

11

Constantino who on the day of the assault asked Torres to drive Pujols back to the hotel. Therefore, Pujols and Torres were within the scope of their employment while traveling to and from the seminar.

The next step is to determine whether plaintiff met her burden of showing that Ser Jobs knew or should have known of the harassment, but took no effectual action to correct the situation. *Burlington*, 524 U.S. at 759, 118 S.Ct. at 2267 ("An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it."). Although Ser Jobs disputes knowledge, the record shows that plaintiff complained to Rodriguez soon after the harassment commenced. She further refused to meet Torres at the airport and declined to answer his calls at work. These actions taken as a whole constitute sufficient evidence of Ser Jobs' knowledge of the harassment. Thus, Pujols has met the prima facie threshold of her claim of sexual harassment against Ser Jobs.

Ser Jobs may avoid liability by proving the affirmative defense established in *Burlington*. Ser Jobs argues that its policy against sexual harassment provided Pujols a way for lodging a sexual harassment complaint outside the chain of command. *Faragher v. City of Boca Raton*, 118 S.Ct. 2275, 2292-93 (1998). Ser Jobs further contends that since Pujols did not file a 'written' complaint she failed to take advantage of the corrective opportunities provided for her. Pujols acknowledges being aware of Ser Jobs' policy and procedures for filing internal sex complaints. Pujols avers her oral complaint to Rodriguez was well within the complaint procedures established in the anti-harassment

AO 72A
(Rev.8/82)

guideline.[24]

Upon review of the record, the Court finds Ser Jobs' anti-harassment policy does not require that a sex harassment complaint be in writing. The policy is unclear on whether the complaint must be made in writing or otherwise.[25] Nonetheless the policy clearly provides the employee should complain to either his supervisor, a Human Resources representative or any management official.[26] And this is exactly what Pujols did. Pujols reasonably expected the head of personnel would take remedial action, pursuant to the authority vested on her by the harassment policy. But the record is devoid of evidence showing Ser Jobs investigated the matter or disciplined Torres. Ser Jobs' failure to intervene on behalf of plaintiff upon her initial complaint paved the way for further acts of harassment which culminated in the April of 1997 incidents. Therefore the Court concludes that the *Farragher* affirmative defense is not satisfied. The sex harassment claim for the acts committed by Torres on April of 1997 may not be disposed of at the summary judgment stage.

---

[24] Dkt. 77, exh. 2, pg. 55-56.

[25] Ser Jobs anti-harassment policy provides, in pertinent part: "The Company strongly encourages all employees to report any incidents of harassment forbidden by this policy <u>immediately</u> so that complaints can be quickly and fairly resolved. You should provide a complaint to your supervisor, a Human Resource representative, or any management official with whom you feel comfortable talking as soon as possible after any incident you feel is prohibited harassment. Your complaint should include the details of the incident, the names of the individuals involved and any witnesses." Docket 77, exh. 8, pg. 9.

[26] Id.

Retaliation Claim

Pujols further claims that she was the victim of illegal retaliation. Specifically, Pujols claims that Angel Jourdan, who was appointed Interim Director of the Puerto Rico programs on the summer of 1997, took several acts against her after she complained to Constantino about Torres' harassment. Pujols also claims Ser Jobs eliminated her position and dismissed her because she filed a sexual harassment claim with the ADU. Defendants counter that plaintiff's retaliation claim is barred for failure to exhaust her administrative remedies. They further contend that plaintiff has not met her burden of proving a prima facie case of retaliation and even if she has, that the decision was motivated by a nondiscriminatory business decision.

"No claim may be brought in federal court unless the prerequisite of administrative investigation has first been met." *Johnson v. General Electric*, 840 F.2d 132, 139 (1st Cir. 1988). Upon review of the record, the Court finds plaintiff's administrative complaint made reference to the allegedly retaliatory acts. Although the report does not refer to Jourdan's conduct as 'retaliatory', the acts were within the scope of the investigation growing out of plaintiff's complaint. Furthermore, plaintiff's attorney subsequently informed ADU of plaintiff's potential dismissal. Defendants' argument is therefore incorrect.

Having disposed of the exhaustion of remedies issue, the next step is to determine whether plaintiff has met her burden of proving the elements of a retaliation claim. To establish a claim of retaliation under Title VII, Pujols must show that (1) she engaged in a protected activity as an employee, (2) she subsequently suffered an adverse employment

action, and (3) there was a causal connection between the protected activity and retaliatory acts. *Santiago Ramos v. Centennial*, 2000 WL 863032 (1st Cir.); *Hernandez Torres v. Intercontinental Trading Inc.*, 158 F.3d 43, 47 (1st Cir. 1998).

There is no dispute that Pujols has established the first element of her retaliation claim. Reporting sexual harassment is a protected activity under Title VII. *Hoeppner v. Croteched Mountain Rehabilitation Center, Inc.*, 31 F.3d 9, 14 (1st Cir. 1994). As to the second element, Pujols complains of two main incidents which in her view were adverse employment actions. The first employment action of which plaintiff complains is Jourdan's close monitoring of her job, including prohibition of direct interaction with Ser's donors and abusive conduct during a meeting. The second retaliatory action to which the plaintiff adverts is termination.

Conduct is adverse employment action if it "constitutes a significant change in employment status, such as ... firing, ... reassignment with significantly different responsibilities...". *Burlington*, 524 U.S. at 761, 118 S.Ct. at 2268. Although most terminations are considered adverse employment actions, Pujol's termination is a close question because she declined a position with similar responsibilities and benefits. It appears thus that plaintiff's economic damages flowed from her decision to decline the new post Ser Job's offered her, rather than from her termination. *See Serrano Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 27-28 (1st Cir. 1997) (damages alleged were flowing entirely from her decision to reject the transfer and resign, and not from other indignities). In like token, it is not clear whether Jourdan's conduct significantly diminished material responsibilities of Pujol's position as to constitute adverse employment action. However,

since a plaintiff's burden of establishing a prima facie case is not onerous, the Court will assume that Pujols' termination and Jourdan's conduct constitute adverse employment actions.

To prove the third element plaintiff must establish a causal connection between the protected conduct and the adverse action. Plaintiff contends the job restrictions imposed by Jourdan, as well as his negative conduct towards her, were reprisals taken against her for complaining to Constantino about Torres' harassment. To establish causation, Pujols points to Torres and Jourdan's friendship. But a friendship in and of itself does not evidence Jourdan's conduct was related to the protected activity. Pujols states that her belief of a plot against her by Torres and Jourdan is grounded "...simply [on] what I can perceive... ".[27] It is clear that such conclusory statement does not permit a finding that Jourdan's conduct was either procured by Torres, related to the complaint against Torres or sex based. The Court finds no other evidence in the record supporting a causal link between Jourdan's alleged harassment and the complaint brought by Pujols against Torres. *Pilgrom v. Trustees of Tufts College*, 118 F.3d 864, 871 (1st Cir. 1997); *Douglass v. United services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc)("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion..."). Thus, plaintiff has failed to establish a causal relation between the restrictions imposed by Jourdan and her complaint to Constantino.

The causation element is met, however, with regard to the termination. Pujols filed

---

[27] Dkt. 77, exh. 15, pg. 50.

the sex harassment complaint in August and the decision to eliminate her post was made sometime between August and September. An inference of retaliation arises when the adverse action is taken with sufficient proximity to the employee's protected activity. *Hodgens v. General Dynamics Corporation*, 144 F.3d 151, 168 (1st Cir. 1998); *Marx v. Schnuck Markets*, 76 F.3d 324, 329 (1st Cir. 1996). The short time span between Pujols' complaint and Ser Job's decision to do away with the position creates an issue of fact about the intent and motive of Ser Job's management. Thus, the Court finds Pujols has established a prima facie retaliation case on her termination claim.

Once the plaintiff establishes a prima facie retaliation claim, the employer has the burden of producing a legitimate, nondiscriminatory motive for its adverse employment action. "The production of such a nondiscriminatory reason dispels the presumption of improper discrimination generated by the prima facie showing of discrimination." *King v. Town of Hanover*, 116 F.3d 965, 968 (1st Cir. 1997). In this case, defendants contend Pujols' termination was a consequence of the overhaul of the federal funding program, not discriminatory animus. Ser Jobs avers that the federal program P.A.S.O.S. under which Ser-Jobs operated was eliminated by Congress effective September 30, 1997.[28] Beginning in October 1, Ser-Jobs would receive funding from a new federal program called "Programa de Ayuda Temporal a Familias Necesitadas" ("TANF").[29] Consequently, Ser-Jobs informed its employees that their current employment contracts

---

[28] Docket 77, exhibit 25.

[29] Docket 77, exhibit 25.

17

would terminate on September 30.[30] During late September, Ser-Jobs offered Pujols a new position under the TANF program, with responsibilities and benefits similar to the ones she previously had.[31] Pujols was asked to draw a strategic plan showing how she would achieve the objectives of the new position.[32] Sandra Fuentes, interim executive director of the Puerto Rico office, informed Pujols that her new contract would last three months and renovation would be contingent upon an evaluation of performance.[33] Pujols declined the position stating that she could not achieve the objectives of the new position.[34]

Plaintiff has failed to submit any evidence, direct or circumstantial, showing Ser-Jobs' well-supported business reason was a mere pretext for retaliation against her for exercising her right to report sexual harassment. *Hodgens*, 144 F.3d at 168. Further Pujols failed to demonstrate that the termination was more likely motivated by a discriminatory reason. See *Burdine*, 450 US at 256, 101 S.ct. 1086.[35] Therefore, in light of the evidence in the record, the Court finds Pujols was terminated because of the overhaul of the federal welfare program, not retaliatory animus. Such conclusion is bolstered by the fact that

---

[30] Docket 77, exhibit 28-29.

[31] Docket 77, exhibit 29.

[32] Docket 77, exhibit 29.

[33] Docket 77, exhibit 30.

[34] Docket 91, exhibit 1, par. 15-17.

[35]The Supreme Court recently held that "the premise that a plaintiff must always introduce additional, independent evidence of discrimination" is incorrect. *Reeves v. Sanderson Plumbing*, 120 S.Ct. 2097, 2109 (2000). The Court pointed out that, in some cases, proof of pretext may also support an inference of discrimination. *Id.*

defendant offered Pujols a new position under the TANF program with similar responsibilities and benefits. Defendants have also shown the employee recruited for the position has performed satisfactorily, countering Pujols' argument regarding the difficulty of achieving the new post's objectives. Thus, inasmuch as Pujols has failed to show Ser Jobs proffered reason to dismiss her is pretextual, her retaliation claims do not survive.

Individual Claims

Pujols presses Title VII claims against Torres and Jourdan. Defendants have moved to dismiss the claims against Torres and Jourdan on the ground that individual liability does not lie under Title VII. The Court agrees. Although the First Circuit has not yet taken a position on the issue,[36] this Court has held on numerous occasions that Title VII can not ground individual liability. See e.g., Maldonado Cordero v. AT&T, 73 F.Supp.2d 177, 183-84 (D.P.R. 1999); Canabal v. Aramark Corp., 48 F.Supp.2d 94, 96-98 (D.P.R. 1999); Acevedo Vargas v. Colon, 2 F.Supp.2d 203, 206 (D.P.R. 1998); Pineda v. Almacenes Pitusa, Inc., 982 F.Supp. 88, 91-93 (D.P.R. 1997); Contreras Bordallo v. Banco Bilbao Vizcaya de Puerto Rico, 952 F.Supp. 72, 73-74 (D.P.R. 1997); Hernandez v. Wangen, 938 F.Supp. 1052, 1063-65 (D.P.R. 1996); Anonymous v. Legal Serv. Corp., 932 F.Supp. 49, 50-51 (D.P.R. 1996). Consequently, the Title VII claims against Torres and Jourdan must fail.

State law claims

The allegations in the Complaint concerning state claims lack specificity. The

---

[36] *Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 444 (1st Cir. 1997) (declining to answer the question of individual liability under Title VII).

AO 72A
(Rev.8/82)

Court shall grant plaintiff until August 28, 2000 to amend the Complaint. Plaintiff shall state with clarity the Puerto Rico laws upon which the local claims are predicated.

Conclusion

The Court hereby dismisses with prejudice Pujols' Title VII retaliation claims against Ser Jobs and Angel Jourdan.[37] The Title VII individual claim against Jose Torres is hereby dismissed with prejudice.

The Pre-Trial and Settlement Conference will be held on September 25, 2000, at 2:00 p.m. Parties are ordered to file a Joint Proposed Pre-Trial Order by September 22, 2000.

IT IS SO ORDERED.

San Juan, Puerto Rico, August 16, 2000.

HECTOR M. LAFFITTE

Chief U.S. District Judge

---

[37] Dkt. 77, 80, 88 and 91 are granted in part.

20